**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

|  |  |
|---|---|
| **MELISSA G. HOHL**, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**NESTLÉ USA, INC.**,<br><br>Defendant. | **Civil Action No.:**<br><br><br><br>**CLASS ACTION COMPLAINT** |

Plaintiff, Melissa G. Hohl ("Plaintiff"), individually and on behalf of the Class defined below of similarly situated persons, alleges the following against Nestlé USA, Inc. ("Nestlé" or "Defendant") based upon personal knowledge with respect to herself and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

**<u>NATURE OF THE ACTION</u>**

1. It is both unfair and unlawful for entities like Nestlé to impose discriminatory and punitive health insurance surcharges on employees who use tobacco products without making available a reasonable alternative standard to avoid those surcharges. This lawsuit challenges Defendant's unlawful practice of charging a "tobacco surcharge" under the Nestlé USA NesCARE Plan (the "Plan") in a manner that violates the Employee Retirement Income Security Act of 1974 ("ERISA") and the implementing regulations. ERISA permits health-contingent wellness programs that promote health if, and **_only if_**, such programs strictly comply with the criteria governing these programs, including: (i) offering a meaningful and accessible _reasonable_

alternative standard to any individual being charged extra based on a health factor; (ii) clearly disclosing the availability of that alternative standard in "all plan materials" describing the surcharge; and (iii) making available the "full reward" to all participants who satisfy the reasonable alternative standard. *See* 29 U.S.C. § 1182; 42 U.S.C. § 300gg-4(j). Instead, Defendant imposes a discriminatory tobacco surcharge without making available, or notifying participants of, a *reasonable* alternative standard that provides those who satisfy it with the full reward that non-smokers receive, violating federal regulations and depriving employees of benefits to which they are entitled under ERISA.

2. Tobacco surcharges have become more prevalent in recent years but to be lawful plans must make available a *compliant* "wellness program" that provides employees with an avenue to avoid the surcharge. Making a compliant wellness program available means employers ***must*** adhere to strict rules set forth by ERISA and the implementing regulations established by the Departments of Labor, Health and Human Services, and the Treasury (collectively, the "Departments") over ten years ago in 2014. ERISA imbues the Departments with the authority to promulgate regulations interpreting ERISA § 702, 29 U.S.C. § 1182, the statute's non-discrimination provision. Accordingly, the Departments have developed a regulatory framework that "must be satisfied" to qualify for the statutory exception or safe harbor. Employers can only invoke this safe harbor if they can demonstrate full compliance with all the requirements.

3. ERISA's strict regulatory requirements are meant to ensure that wellness programs actually promote health and preclude discrimination, instead of wellness programs that are "subterfuge[s] for discriminating based on a health factor."[1] The Final Regulations establish that

---

[1] *Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158, 33163 (June 3, 2013) (hereinafter the "**Final Regulations**").

for plans to be compliant, an employer must provide a clearly defined, reasonable alternative standard that allows participants to obtain the "full reward," including retroactive reimbursement of surcharges paid while completing the alternative standard; plans must also provide proper notice to all participants. *See id.*, 33159–63. First and foremost, a wellness program must be genuinely designed to improve health or prevent disease, rather than functioning as an improper penalty imposed on certain participants under the guise of a health initiative. Defendant's Plan imposes a tobacco surcharge while failing to offer compliant avenues to avoid the surcharge and failing to provide proper notice, in violation of ERISA.

4.      Defendant's Plan does not clearly or consistently establish a reasonable alternative standard that informs participants in all Plan materials discussing the surcharge of all available avenues to avoid said surcharge. Defendant fails to disclose in all Plan materials discussing the surcharge (i) contact information for accessing the alternative standard, (ii) that participants have access to an alternative standard through which they may qualify for the full reward or (iii) that they have the right to a physician-directed alternative. In doing so, Defendant withholds critical information from participants needed to properly assess their rights and, in effect, shifts Plan costs onto employees based on a health factor without satisfying the requirements needed to take advantage of ERISA's safe harbor.

5.      The need for regulatory safeguards surrounding these types of wellness programs is underscored by studies showing little evidence that wellness programs effectively reduce healthcare costs through health improvement. Instead, the savings employers claim often result in cost-shifting onto employees with higher health risks, disproportionately burdening low-income

and vulnerable workers who end up subsidizing their healthier colleagues.[2] The regulatory safeguards seek to prevent wellness programs from being misused as thinly veiled revenue-generating schemes at the expense of employees who are least able to afford the additional costs by shifting the burden to plan sponsors to demonstrate compliance once a participant alleges discriminatory surcharges. The goal is to ensure that wellness programs operate equitably and in a non-discriminatory manner, and to promote genuine health improvements.

6.      Outcome-based programs,[3] such as being tobacco-free or completing a smoking cessation program, must offer a clearly defined "*reasonable* alternative standard," which is an alternative way for "all similarly situated individuals" to obtain the reward (or avoid a penalty) if they are unable to meet the initial wellness program standard (i.e., being tobacco-free). Critically, ERISA's implementing regulations require that "the *same*, *full reward*" must be provided to individuals who complete the alternative standard, regardless of when they do so during the plan year.[4] The Department of Labor ("DOL") has made clear that participants should not be forced to

---

[2] Horwitz, J. R., Kelly, B. D., & DiNardo, J. E. (2013). *Wellness incentives in the workplace: Cost savings through cost shifting to unhealthy workers*. Health Affairs, 32(3), 468–476, 474 ("wellness programs may undermine laws meant to prevent discrimination on the basis of health status. Since racial minorities and people with low socioeconomic status are more likely than others to have more health risks, they are also more likely to be adversely affected by cost shifting"); *see also* Dorilas, E., Hill, S. C., & Pesko, M. F. (2022). *Tobacco surcharges associated with reduced ACA marketplace enrollment*. Health Affairs, 41(3), Abstract (finding that tobacco surcharges are significant barriers to affordable health insurance).

[3] "An outcome-based wellness program is a type of health-contingent wellness program that requires an individual to attain or maintain a specific health outcome (such as not smoking or attaining certain results on biometric screenings) in order to obtain a reward." 29 C.F.R. § 2590.702(f)(1)(v).

[4] *See* Final Regulations, 33163 ("while an individual may take some time to request, establish, and satisfy a reasonable alternative standard, **the same, full reward must be provided to that individual** as is provided to individuals who meet the initial standard for that plan year. (For example, if a calendar year plan offers a health-contingent wellness program with a premium discount and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1,

rush through the program under the threat of continued surcharges and that every individual participating in the program must receive the same reward as provided to non-smokers. *Id.* The Departments made this requirement clear when they stated it is "[t]he intention of the Departments . . . that, regardless of the type of wellness program, ***every individual participating in the program*** should be able to receive ***the full amount of any reward or incentive*** . . .." *Id.*, 33160 (emphasis added). Defendant violates these requirements by failing to make available a *reasonable* alternative standard that provides full reimbursement to employees who complete it, operating a non-compliant penalty structure rather than a lawful wellness incentive, and failing to clearly notify participants of all the avenues available to them to avoid the surcharge, including benefit guides, plan documents, and summary plan descriptions ("SPDs"). *Id.* These failures constitute direct violations of ERISA's wellness program regulations.

7.      Defendant cannot qualify for the statutory safe harbor because, while it imposes a health-based surcharge, it does not comply with the requirements for lawful wellness program. The Plan fails to satisfy the essential regulatory criteria, which "***must*** be satisfied," (*id.*, 33160; emphasis added) for a wellness program to be lawful under ERISA. Final Regulations, 33160. The core deficiency of Defendant's wellness program is that it does not make available an alternative standard that makes available the "full reward" to all "similarly situated participants" who complete it, as explicitly required by 42 U.S.C. § 300gg-4(j)(3)(D) and 45 C.F.R. § 146.121(f)(4)(iv). Defendant, in their Summary Plan Description ("SPD"), makes no mention of the surcharge or how participants who quit tobacco can have the surcharge removed and reimbursed. To that extent, Defendant fails to make available a clearly defined, *reasonable*

the plan or issuer must provide the premium discounts for January, February, and March to that individual.)" (emphasis added)).

alternative standard that ensures employees who satisfy that standard receive a full refund of the $75.00 monthly charges that are withheld from participants' paychecks. Instead, Defendant uses these unlawfully obtained funds to offset its own contributions to the Plan, which allows additional money to remain in Defendant's accounts on which the company earns interest. By increasing participant contributions through this surcharge, Defendant shifts costs away from the company and onto participants, thereby violating its fiduciary duties.

8. Defendant also violates ERISA's wellness program regulations by failing to provide the notice required by statute and regulation, which is an independent basis for liability. Federal law requires that a plan "disclose in *all plan materials* describing the terms of the wellness program the availability of a reasonable alternative standard." 42 U.S.C. § 300gg-4(j)(3)(E) (emphasis added). Defendant's SPD fails to inform participants that they can complete a tobacco cessation program to earn the full reward, fails to provide contact information for accessing the program, and fails to inform participants that they have a right to a physician-directed alternative, as expressly required by ERISA and the wellness program regulations. *See* 42 U.S.C. § 300gg-4(j)(3)(E); 45 C.F.R. § 146.121(f)(4)(v). The SPD should contain information related to premium differentials that participants are subjected to because the amount a participant pays is a critical term that ought to be clearly and transparently conveyed to participants. To that extent, the notice provided to participants is deficient because it fails to notify participants of a *reasonable* alternative standard and fails to include the required contact information and physician-accommodation statement.

9. These deficiencies in its wellness program are not technical defects. The Final Regulations make clear that where an ERISA plan imposes a premium differential based on tobacco use, those terms are "required to be disclosed in the summary plan description (SPD), as

well as in the applicable governing plan documents." 78 Fed. Reg. 33158, 33166. Proper notice is critical because failing to notify participants can chill engagement with the "program of health promotion" and deter participants from taking steps to bettering their health. Because Defendant's Plan materials do not contain these required disclosures, Nestlé cannot invoke ERISA's wellness program safe harbor as an affirmative defense. The tobacco surcharge imposed through the Plan therefore constitutes unlawful discrimination based on a health-status-related factor in violation of ERISA.

10.     Because Nestlé impose a $75 monthly tobacco surcharge and does not make available a compliant alternative standard or provide the required notice in all Plan materials discussing the surcharge, the Plan fails to satisfy the essential regulatory criteria, which "***must*** be satisfied." Final Regulations, 33160. Defendant does not provide compliant notice in additional participant-facing materials discussing the premium differential, such as the benefit guides, in violation of ERISA's wellness program rules. As a result of these deficiencies, Nestlé cannot take advantage of the statutory safe harbor and, therefore, the surcharge functions as a penalty rather than a compliant wellness incentive. Deficient and misleading notice is a fundamental violation of ERISA's core anti-discriminatory purpose: ensuring that participants have a fair and compliant opportunity to be treated the same as non-smokers.

11.     This Complaint alleges that Defendant imposes a health-based tobacco surcharge without making available a compliant alternative standard to avoid the surcharge. Defendant bears the burden of proving that its tobacco surcharge is lawful by showing that its wellness program fully complies with *every* requirement under ERISA because Nestlé is seeking to take advantage of the statutory safe harbor in 42 U.S.C. § 300gg-4(b)(2)(B). Charging participants a tobacco surcharge while not informing them of a *reasonable* alternative standard that makes available the

"full reward," and failing to provide proper notice makes the surcharge facially noncompliant. No amount of *post hoc* justifications can cure these fundamental defects. This type of discrimination is permissible only if employers meet strict criteria, which Defendant does not. Nestlé's Plan is not a "program[] of health promotion or disease prevention" as required by ERISA but instead an impermissible cost-shifting scheme that unlawfully penalizes employees for their health status.

12.    Participants like Plaintiff are permitted to challenge a surcharge when there is no compliant wellness program made available or when employers provide deficient or misleading information. Once a participant alleges that a surcharge violates ERISA's anti-discrimination provisions along with facts showing the deficiencies in the wellness program, the burden shifts to the employer, Nestlé, to demonstrate that the wellness program fully satisfies all the statutory and regulatory criteria, including the obligation to make available the "full reward" and to notify participants of the same. *See Cunningham v. Cornell Univ.*, 145 S. Ct. 1020, 1029 (2025) (reaffirming "that 'the burden of persuasion as to certain elements of a plaintiff 's claim may be shifted to defendants, when such elements can fairly be characterized as affirmative defenses or *exemptions*.'").

13.    Plaintiff is a former employee of Nestlé who paid the unlawful tobacco surcharge to maintain health insurance coverage under the Plan for herself. This surcharge imposed an additional financial burden on Plaintiff and her family and continues to impose such a burden on those similarly situated.

14.    Plaintiff brings this lawsuit individually and on behalf of all similarly situated Plan participants and beneficiaries, seeking to recover these unlawfully charged fees and for Plan-wide equitable relief to prevent Defendant from continuing to profit from its violations under 29 U.S.C. § 1109. Under 29 U.S.C. § 1109, Defendant is a fiduciary of the Plan who has legal obligations to

8

act in the best interests of Plan participants and to comply with federal law. Plaintiff, on behalf of herself and the Plan as a whole, seeks appropriate equitable relief under 29 U.S.C. §§ 1132(a)(2) and (a)(3) to address Defendant's ongoing violations of ERISA's anti-discrimination provisions.

## PARTIES

15.    Plaintiff is, and at all times mentioned herein was, an individual citizen of the Commonwealth of Virginia residing in the County of Henry. Plaintiff was an employee of Defendant Nestlé, who paid a tobacco surcharge of $75 (roughly $900 annually) under the Plan. Plaintiff was required to pay this tobacco surcharge to maintain health insurance under the Plan.

16.    Plaintiff is a participant in the Plan pursuant to 29 U.S.C. § 1002(7).

17.    Defendant Nestlé is a Delaware corporation with its principal place of business in Arlington, Virginia. Nestlé is a multinational food and beverage company that operates nationwide through numerous subsidiaries and affiliated entities. At all relevant times, Nestlé sponsored, maintained, and administered the Plan within the meaning of ERISA. Nestlé exercised discretionary authority and control over the administration of the Plan, including the determination and collection of participant premium contributions and the implementation of the tobacco surcharge. In carrying out these functions, Nestlé acted as a fiduciary within the meaning of ERISA.

18.    At all relevant times, Nestlé employed tens of thousands of employees and maintained a Plan covering a substantial number of participants and beneficiaries. The Plan is an employee welfare benefit plan subject to ERISA, 29 U.S.C. § 1002(1) and (3). As of December 31, 2024, the Plan covered more than 34,000 participants.

## JURISDICTION AND VENUE

19.     The Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331, as this suit seeks relief under ERISA, a federal statute. Upon information and belief, the number of class members is over 1,000, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

20.     This Court has personal jurisdiction over Defendant because Nestlé has significant operations in this District, Plaintiff's claims and the claims of others similarly situated arise from the acts and omissions of Defendants with respect to their activities and conduct concerning Plaintiff in the Commonwealth of Virginia, and Defendant has purposefully availed itself of the privilege of conducting business in the Commonwealth of Virginia.

21.     Venue is proper in this District pursuant to 29 U.S.C. § 1132(e)(2) because Defendant conducts business in this District and may be found in this District.

## FACTUAL BACKGROUND

### I.      DEFENDANT'S TOBACCO SURCHARGE VIOLATES ERISA'S ANTI-DISCRIMINATION RULE

#### A.  Statutory and Regulatory Requirements

22.     To expand access to affordable health insurance coverage, the Affordable Care Act ("ACA") amended ERISA to prohibit any health insurer or medical plan from discriminating against participants in providing coverage or charging premiums based on a "health-related factor," including tobacco use. Under this rule, a plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any health-related factor in relation to the individual or to an individual enrolled

under the plan as a dependent of the individual." ERISA § 702(b)(1), 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1).

23.     The statute permits group health plans to "establish[] premium discounts or rebates . . . in return for adherence to ***programs of health promotion and disease prevention***" (29 U.S.C. § 1182(b)(2)(B) (emphases added)); however, these "wellness programs"—to qualify for this statutory safe harbor exception—must strictly adhere to the mandated regulatory requirements.

24.     Under ERISA § 505, 29 U.S.C. § 1135, Congress granted the Department of Labor the authority to issue regulations, including the power to establish regulations prohibiting discrimination against participants and beneficiaries based on their health status under ERISA § 702, 29 U.S.C. § 1182. This authority empowers the Secretary of Labor (the "Secretary") to "prescribe such regulations as he finds necessary or appropriate to carry out the provisions of" Title I of ERISA. (29 U.S.C. § 1135). Furthermore, ERISA § 734, 29 U.S.C. § 1191c, explicitly reinforces the Secretary's authority to issue regulations concerning group health plan requirements, which grants the power to "promulgate such regulations as may be necessary or appropriate to carry out the provisions" of ERISA Title I, Part 7. 29 U.S.C. § 1191c.

25.     Exercising this delegated authority, in 2006, the Secretary issued regulations through the notice-and-comment rulemaking process outlining the criteria that a wellness program must meet to qualify for the premium non-discrimination exception under ERISA § 702(b). *See* Final Regulations, 33158–59. Following the amendments by the ACA and Public Health Service Acts, in 2010, the Departments published proposed regulations in November 2012 to "amend the 2006 regulations regarding nondiscriminatory wellness programs." *Id.*, 33159. These regulations (i.e., the Final Regulations) were approved and signed in 2013 to be effective January 1, 2014. *Id.*, 33158.

26.     The Final Regulations specify that health promotion or disease prevention programs, such as outcome-based wellness initiatives (i.e., smoking cessation programs), must meet detailed requirements to qualify for the statutory safe harbor. As the Departments explained, these criteria "***must be satisfied*** in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Id.*, 33163 (emphasis added). "That is," the Departments explained, "these rules set forth criteria for an ***affirmative defense*** that can be used by plans and issuers in response to a claim that the plan or issuer discriminated" against participants. *Id.* (emphasis added). That means once a participant alleges a discriminatory surcharge along with facts showing that the alternative standard offered to them is deficient, the burden then shifts to the employer to prove that the wellness program satisfies *all* the necessary criteria.

27.     The criteria in the Final Regulations are not optional. They serve as the only lawful pathway for plans to impose health-based premium differentials by ensuring that wellness programs do not arbitrarily penalize participants and they prevent employers from using surcharges as a revenue-generating mechanism rather than a genuine tool for health promotion. If a wellness program fails to meet even one of these stringent requirements, the program is noncompliant and the employer cannot benefit from the statutory carve-out. *See* § 2590.702(f)(4) (describing the "[r]equirements for outcome-based wellness programs," stating that a program "does not violate the provisions of this section ***only if <u>all</u> of the [] requirements are satisfied***." (emphasis added)).

**B.  Regulatory Criteria**

28.     To comply with ERISA and avoid unlawful discriminatory surcharges, outcome-based wellness programs must meet the following five (5) criteria:

12

(a) Frequency of opportunity to qualify: Participants must be given at least one chance annually to qualify for the reward associated with the program to ensure ongoing accessibility and fairness. 29 C.F.R. § 2590.702(f)(4)(i).

(b) Size of reward: penalties or rewards cannot exceed 50% of the cost of employee-only coverage. § 2590.702(f)(4)(ii).

(c) Reasonable design: programs must be "reasonably designed" to promote health and cannot be "a subterfuge for discriminating based on a health factor." This determination is based on all the relevant facts and circumstances. "To ensure that an outcome-based wellness program is reasonably designed to improve health and does not act as a subterfuge for underwriting or reducing benefits based on a health factor, a reasonable alternative standard to qualify for the reward must be provided to any individual who does not meet the initial standard based on a measurement, test, or screening. . . ." § 2590.702(f)(4)(iii)).

(d) Uniform availability and reasonable alternative standards: "The full reward under the outcome-based wellness program must be available to all similarly situated individuals." § 2590.702(f)(4)(iv).

(e) Notice of availability of reasonable alternative standard: notice must include (a) instructions on how to access the reasonable alternative standard; (b) contact information for inquiries about the alternative standard; and (c) an explicit statement that participants' personal physician's recommendations will be accommodated. *See* § 2590.702(f)(4)(v).

29.     The Departments provided valuable insight into each of the criteria, reflecting their intent to operationalize the statute's protections in a manner that both promotes health and prevents discriminatory practices under ERISA.

30.     Regarding the first criteria, "the once-per-year requirement was included as a bright-line standard for determining the minimum frequency that is consistent with a reasonable design for promoting good health or preventing disease." Final Regulations, 33162. The once-per-year requirement ensures that participants have a meaningful opportunity to participate in a reasonable alternative standard.

31.     A key requirement of the fourth criterion for outcome-based programs is that the "full reward" must be available to "all similarly situated individuals[,]" regardless of when they meet the reasonable alternative standard during the plan year. *See* Final Regulations, 33165. Critically, the Departments clearly state that it is "[t]he intention of the Departments . . . that, regardless of the type of wellness program, ***every individual*** participating in the program should be able to receive the ***full amount of any reward or incentive*. . ..**" *Id.* (emphases added). While plans have flexibility in determining the manner in which they provide the "full reward," providing the "full reward" to every participant is ***mandatory***, regardless of when the participant satisfies the alternative standard. The Departments have made this clear:

> While an individual may take some time to request, establish, and satisfy a reasonable alternative standard, ***the same, full reward must be provided to that individual as is provided to individuals who meet the initial standard for that plan year***. (For example, if a calendar year plan offers a . . . premium discount and an individual . . . satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.) Plans and issuers have flexibility to determine ***how*** to provide the portion of the reward corresponding to the period before an alternative was satisfied (e.g., payment for the retroactive period or pro rata over the remainder of the year) ***as long as . . . the individual receives the full amount of the reward***.

Final Regulations, 33163 (emphases added).

32.    The Final Regulations provide an example of a non-compliant plan that imposes a tobacco use surcharge but does not facilitate the participant's enrollment in or participation in a smoking cessation program. *See id.*, Example 8. Instead, the employer advises the participant to find a program, pay for it, and provide a certificate of completion. *Id*. The Final Regulations conclude that the plan is not compliant because it "has not offered a reasonable alternative standard . . . and the program fails to satisfy the requirements of paragraph (f) of this section." *Id*.; Final Regulations, 33180.

33.    For health contingent wellness programs, the Final Regulations require the notice be disclosed "in **all** plan materials describing the terms of" the program. 42 U.S.C. § 300gg-4(j)(3)(E); 45 C.F.R. § 146.121(f)(4)(v) (emphasis added). Further, the Final Regulations establish that "[f]or ERISA plans, wellness program terms (including the availability of any reasonable alternative standard) are generally required to be disclosed in the summary plan description (SPD), as well as in the applicable governing plan documents . . . if compliance with the wellness program affects premiums . . . under the terms of the plan." Final Regulations, 33166. Plans that charge their participants more and fail to inform participants of a reasonable alternative standard to the surcharge violate these requirements.

## II.    DEFENDANT CANNOT AVAIL ITSELF OF ERISA'S SAFE HARBOR

34.    Defendant's tobacco surcharge is discriminatory because Defendant does not make available a compliant outcome-based wellness program that would allow participants to avoid the full surcharge during the Plan year. Under the Plan, participants identified as tobacco or nicotine users are assessed a monthly surcharge (i.e., $75 per month for a single user or $150 per month for multiple users), which is collected through employees' regular payroll deductions for medical

coverage. The surcharge applies throughout the Plan year and is in addition to the underlying cost of coverage.

35.    Defendant violates the full reward rule. Although Defendant offers enrollment in a tobacco cessation program as an alternative standard, its materials make clear that participants may only change their tobacco-user status during Annual Enrollment and do not receive reimbursement of surcharges already paid if they enroll in or complete the program mid-year. By conditioning relief on prospective enrollment elections rather than providing the full premium differential upon satisfaction of the alternative standard, Defendant fails to make the "full reward" available as required by ERISA's wellness program regulations.

36.    Defendant's materials confirm that the supposed "alternative standard" is illusory for participants who incur the surcharge during the Plan year. Participants are told they may avoid the surcharge if they are enrolled in an approved program, but they are not informed of any mechanism to obtain retroactive relief or reimbursement for surcharges already assessed. Nor do Defendant's materials explain when or how any premium adjustment would take effect following completion of the program. As a result, participants who take steps to comply mid-year remain subject to months of unrecoverable surcharges.

37.    Defendant also violates the frequency of opportunity requirement. By restricting changes to tobacco-user status to Annual Enrollment, Defendant prevents participants from accessing the reward "at least once per year" in any meaningful sense. Participants who enroll in or complete a cessation program after the start of the Plan year are categorically denied access to the reward for that year, rendering the program inaccessible for a substantial portion of participants and time periods.

38.     The Plan's SPD and enrollment materials fail to provide the disclosures required by ERISA and its implementing regulations. Although the SPD references the existence of a wellness program and states in general terms that a reasonable alternative standard exists, it does not explain how to access that alternative, how to qualify for it, or whether participants who satisfy it will receive the full reward during the Plan year. In other words, the Plan notifies participants of an alternative standard but not one that is *reasonable*. The SPD and benefit materials, including benefit guides, also omit the required statement that recommendations of a participant's personal physician will be accommodated in determining a reasonable alternative standard. This omission is uniform across the Plan's participant-facing materials describing the tobacco surcharge and wellness program. Defendant likewise fails to provide clear and accessible contact information for obtaining or initiating the alternative standard in the context of the surcharge itself, instead directing participants generally to intranet resources or external programs without meaningful guidance.

39.     These disclosure failures are material. The tobacco surcharge directly affects participants' required premium contributions, yet Defendant does not disclose in "all plan materials describing the terms of the wellness program" the information necessary for participants to understand how to avoid the surcharge, how to access the alternative standard, or that physician-directed alternatives are available. Instead, Defendant's materials provide only vague and incomplete descriptions that obscure participants' rights and options.

40.     By omitting this information from core Plan documents and enrollment materials, Defendant deprived participants, including Plaintiff, of clear, accessible notice of material Plan terms and made it substantially more difficult for them to understand how to avoid or mitigate the surcharge. Participants are led to believe that avoiding the surcharge depends solely on their status

at Annual Enrollment, rather than on their ability to satisfy an alternative standard at any point during the Plan year.

41.    Defendant's wellness program is not reasonably designed to promote health or prevent disease within the meaning of ERISA. Rather than encouraging participation, the program is structured to ensure that participants who incur the surcharge at the beginning of the Plan year will continue to pay it regardless of subsequent compliance efforts. By withholding the full reward from participants who engage with the cessation program mid-year, Defendant's program operates as a financial penalty rather than a genuine health promotion initiative.

42.    Plaintiff paid the tobacco surcharge and was never informed by Defendant or anyone acting on its behalf that enrolling in or completing a tobacco cessation program during the Plan year would result in reimbursement of previously assessed surcharges or full relief from the surcharge for that year. Nor was Plaintiff informed that a physician-directed alternative was available. Defendant's failures to provide compliant notice and to make the full reward available deprived Plaintiff of the opportunity to obtain the premium relief required under ERISA's wellness program regulations.

43.    Allowing entities like Nestlé to exploit participants and unlawfully extract millions of dollars annually from them without making available a compliant wellness program transforms the surcharge into a "subterfuge for discrimination" and undermines ERISA's purpose of protecting workers from health-based discrimination. If unchecked, this practice would permit employers to manipulate wellness programs as revenue-generating schemes rather than genuine health initiatives, shifting unjust financial burdens onto employees in violation of federal law. This type of conduct violates not only ERISA's antidiscrimination rules governing wellness programs

18

but also the statute's fiduciary duties of loyalty and prudence, as Defendants failed to administer the Plan solely in the interest of participants.

### III.  DEFENDANT'S SELF-DEALING AND MISMANAGEMENT OF PLAN FUNDS

44.     Defendant administered the tobacco surcharge by communicating, each year, with participants about the terms governing the wellness program, by determining which participants qualify to avoid the surcharge and when any such relief would take effect, and by controlling how surcharge amounts were assessed and applied within the Plan. Defendant withholds the premium differential directly from participants' paychecks as a pre-tax contribution, alongside required premium deductions. These amounts are not standalone penalties; they are collected as part of the overall contribution structure used to fund Plan benefits.

45.     The governing Plan documents make clear that medical coverage is funded through a combination of employer and participant contributions. Defendant commits a defined company contribution amount toward the cost of coverage, with participants paying the remainder through payroll deductions. By imposing a tobacco surcharge on top of those required contributions, Defendant created what should have been a third stream of funding available to the Plan: (1) participants' base premium contributions, (2) Defendant's company contribution, and (3) the additional amounts collected through the tobacco surcharge. But instead of allowing those funds to increase the total assets available to pay benefits, Defendant used the surcharge to offset or reduce its own funding obligation. Because the total cost of coverage is fixed by coverage tier, each dollar collected through the surcharge correspondingly reduced the amount Defendant needed to contribute. The surcharge therefore did not increase Plan funding; it merely shifted costs from Defendant to participants.

46. The tobacco surcharge amounts collected from participants are not segregated into a separate trust or Plan account, but instead are deposited into Defendant's general accounts, where, upon information and belief, they are commingled with Defendant's corporate assets and used in the ordinary course of its business. This practice constitutes self-dealing. Defendant exercised discretionary authority over Plan administration and contribution mechanics to structure and deploy the surcharge in a manner that generated savings for itself, rather than benefits for the Plan or its participants. By using participant-funded surcharge amounts to replace, rather than supplement, employer contributions, Defendant deprived the Plan of funds it otherwise should have received.

47. In doing so, Defendant failed to act solely in the interest of participants and beneficiaries, as required by ERISA. Rather than use surcharge proceeds to enhance Plan benefits or reduce participant costs, Defendant retained the economic benefit of those amounts by reducing its own contributions. Upon information and belief, the funds Defendant avoided contributing remained within its control and generated financial benefit to Defendant, while the Plan and its participants were deprived of the full funding to which they were entitled. This diversion of Plan-related funds constitutes self-dealing, violates the duty of loyalty, and constitutes a prohibited transaction under ERISA §§ 404 and 406

## CLASS DEFINITION AND ALLEGATIONS

48. Plaintiff brings this action individually and on behalf of all other similarly situated individuals, pursuant to Rule 23(b)(1) of the Federal Rules of Civil Procedure.

49. Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

**Tobacco Surcharge Class**
All individuals residing in the U.S. who, from 2014 to the time of judgment, paid a tobacco surcharge in connection with their participation in a health or welfare plan offered by Defendant.

50. Excluded from the Class are Defendant's officers and directors.

51. Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

52. The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a) and (b)(1).

53. **<u>Numerosity</u>**. This action is appropriately suited for a class action. The members of the Class are so numerous that the joinder of all members is impracticable. Plaintiff is informed, believes, and thereon alleges, that the proposed Class contains thousands of participants who have been damaged by Defendant's conduct as alleged herein, the identity of whom is within the knowledge of Defendant and can be easily determined through Defendant's records.

54. **<u>Commonality</u>**. This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

   a. Whether Defendant's tobacco surcharge discriminates against participants based on a health status related factor;

   b. Whether Defendant makes available a reasonable alternative standard by which a participant could receive the "full reward" of the tobacco surcharge;

   c. Whether Defendant provided the required notice in *all* the Plan materials describing the surcharge;

   d. Whether Defendant provided the required statement that participants' personal physicians' recommendations would be accommodated in all Plan materials describing the surcharge;

   e. Whether Defendant's wellness program violates ERISA and the Final Regulations;

   f. Whether Defendant breached its fiduciary duties by collecting and retaining the tobacco surcharge to offset its own contributions to the Plan;

21

g.   Whether Defendant breached its fiduciary duties by administering the Plan in a way as to refuse reimbursing participants who complete the alternative standard offered;

h.   Whether Defendant breached its fiduciary duties by failing to periodically review the terms of its wellness program and the communications sent to participants to ensure compliance with ERISA and applicable regulations;

i.   The appropriate mechanisms to determine damages on a class-wide basis.

55.   **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class, because, *inter alia*, all Class members have been injured through the uniform misconduct described above and were charged improper and unlawful tobacco surcharge. Moreover, Plaintiff's claims are typical of the Class members' claims because Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class. In addition, Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class.

56.   **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff and members of the Class each participated in health and welfare plans offered by Defendant and were harmed by Defendant's misconduct in that they were assessed unfair and discriminatory tobacco surcharges. Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

57.   Plaintiff seeks declaratory and equitable relief on grounds generally applicable to the Class. Unless the Class is certified, Defendant will be allowed to profit from its unfair and discriminatory practices, while Plaintiff and the members of the Class will have suffered damages. Unless Class-wide declaratory relief is issued, Defendant may continue to benefit from the violations alleged, and the members of the Class will continue to be unfairly treated.

## CAUSES OF ACTION

### COUNT I
**UNLAWFUL SURCHARGE – FAILURE TO PROVIDE A REASONABLE ALTERNATIVE STANDARD**
**(Violation of ERISA § 702, 29 U.S.C. § 1182(b) and PHSA § 2705, 42 U.S.C. § 300gg-4(j)(3)(D); 29 C.F.R. § 2590.702(f)(4)(iv); 45 C.F.R. § 146.121(f)(4)(iv))**

58.     Plaintiff re-alleges and incorporates herein by reference allegations 1–57 of this Complaint.

59.     Defendant unlawfully imposes a tobacco surcharge on all participants who use tobacco in violation of ERISA § 702. By imposing discriminatory surcharges of $75 monthly on participants (and their spouses) who use tobacco, without complying with the statutory and regulatory requirements, Defendant is violating ERISA § 702(b), 29 U.S.C. § 1182(b)(1) and 29 C.F.R. § 2590.702(f)(4). This discrimination stems from Defendant's decision not to provide a *reasonable* alternative standard that makes available the full reward to those who satisfy the alternative standard, in violation of ERISA and the Final Regulations. While Defendant offers an alternative standard, that standard is not reasonable because it fails to provide the full reward.

60.     ERISA's wellness program regulations require that the "full reward" associated with an outcome-based wellness program be made available to all similarly situated individuals who satisfy the applicable standard, including through completion of a reasonable alternative standard. Defendant's program fails this requirement. As reflected in Defendant's own materials, participants who do not initially qualify as non-tobacco users are informed that they may avoid the surcharge only if they are enrolled in a cessation program during Annual Enrollment, and they are not informed that completion of an alternative standard during the Plan year entitles them to the same premium relief afforded to non-tobacco users. Nor are participants informed of any entitlement to retroactive reimbursement or full relief upon completion of the alternative standard.

23

By structuring and communicating the program in a manner that withholds the full reward from participants who satisfy the applicable standard during the Plan year, and by conditioning access to relief on enrollment timing rather than on satisfaction of the standard itself, Defendant denies uniform access to the full reward and treats similarly situated individuals differently based on health status. As a result, Defendant's tobacco-related premium differential fails to satisfy the requirements of 29 U.S.C. § 1182(b)(2)(B), 42 U.S.C. § 300gg-4(j), and 29 C.F.R. § 2590.702(f).

61.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: (A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan. *See* 29 U.S.C. § 1182(b). Because Defendant's surcharge program does not satisfy the criteria that plans **must** comply with to qualify as a compliant "program[] of health promotion and disease prevention," Defendant cannot qualify for the statutory safe harbor and the tobacco surcharge is, therefore, unlawful and discriminatory. Plaintiff and Class Members are entitled to relief under ERISA § 502(a)(3).

## COUNT II
### UNLAWFUL SURCHARGE – FAILURE TO PROVIDE REQUIRED NOTICE
**(Violation of ERISA § 702, 29 U.S.C. § 1182(b) and PHSA § 2705, 42 U.S.C. § 300gg-4(j)(3)(E); 29 C.F.R. § 2590.702(f)(4)(v); 45 C.F.R. § 146.121(f)(4)(v))**

62.     Plaintiff re-alleges and incorporates herein by reference allegations 1–57 of this Complaint.

63.     Defendant's tobacco surcharge program is not and was not a permissible wellness program because it failed to provide proper notice of the availability of a *reasonable* alternative standard, in violation of 29 C.F.R. § 2590.702(f)(4)(v).

64. Defendant's key Plan materials, including the SPD and benefit guides, fail to adequately describe the tobacco-related premium differential and fail to provide the disclosures required for an outcome-based wellness program. Although the SPD references the existence of a wellness program in general terms, it does not clearly inform participants how to access a reasonable alternative standard, does not explain that completion of such a standard during the Plan year would entitle participants to the same premium relief afforded to non-tobacco users, and does not explain when or how any premium adjustment would be applied. The materials similarly fail to provide clear, accessible contact information for initiating or obtaining the alternative standard in the context of the surcharge itself.

65. Defendant's Plan materials also omit the required statement that recommendations of a participant's personal physician will be accommodated in determining a reasonable alternative standard. This omission is consistent across the Plan's participant-facing materials describing the tobacco surcharge and wellness program. These notice failures independently violate ERISA's wellness program regulations, which require that "all plan materials" describing a health-contingent wellness program clearly disclose both contact information for accessing a reasonable alternative standard and a physician-accommodation statement. Neither the SPD nor the benefit guides contain this required disclosure and, upon information and belief, Defendant distributed communications describing or implementing the tobacco-related premium differential without including these required disclosures, further compounding these violations and precluding Defendant from invoking ERISA's wellness program safe harbor.

66. Defendant's imposition of the tobacco surcharge therefore constitutes unlawful discrimination based on a health-status-related factor in violation of 29 U.S.C. § 1182(b)(1) and 42 U.S.C. § 300gg-4.

67.      ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: (A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan. *See* 29 U.S.C. § 1182(b). Because Defendant's surcharge program does not satisfy the criteria that plans *must* comply with to qualify as a compliant "program[] of health promotion and disease prevention," Defendant cannot qualify for the statutory safe harbor and the tobacco surcharge is, therefore, unlawful and discriminatory. Plaintiff and Class Members are entitled to relief under ERISA § 502(a)(3).

<u>COUNT III</u>
**BREACH OF FIDUCIARY DUTY (PLAN-LEVEL RELIEF)**
**(Violation of ERISA §§ 404, 406 and 409, 29 U.S.C. §§ 1104, 1106 and 1109)**

68.      Plaintiff re-alleges and incorporates herein by reference allegations 1–57 of this Complaint.

69.      ERISA requires a fiduciary to act "solely in the interest of participants," to do so with "the care, skill, prudence, and diligence" of a prudent person, "in accordance with the documents and instruments governing the plan," and to refrain from "deal[ing] with the assets of the plan" in the fiduciary's own interest. 29 U.S.C. §§ 1104(a)(1); 1106(b)(1). These duties of loyalty and prudence are the "highest known to the law" and require fiduciaries to have "an eye single to the interests of the participants and beneficiaries." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982).

70.      Instead of loyally and prudently acting in the best interests of Plan participants, Defendant chose to use Plan assets to benefit itself, to the detriment of the Plan and its participants, by unlawfully withholding millions of dollars in tobacco surcharges from participants' paychecks and using these funds to offset its own contribution obligations. These surcharges were collected

as pre-tax deductions alongside other contributions to the Plan and therefore constituted Plan assets upon collection. Defendant breached its fiduciary duties by assessing and collecting the tobacco surcharge in violation of federal law and the terms of the Plan, and then using those funds to reduce its own costs. The Plan should have received three funding streams: (1) employee premium contributions, (2) Defendant's employer contribution, and (3) the surcharge itself. Instead, Defendant used the surcharge amounts to offset its own contributions, shifting the costs associated with the Plan from itself to participants like Plaintiff. Upon information and belief, Defendant further profited by retaining surcharge amounts in its general accounts, earning a float, and failing to remit the full employer contribution owed to the Plan.

71. At all relevant times, Defendant administered the Plan within the meaning of 29 U.S.C. § 1002(16) and acted as a fiduciary within the meaning of 29 U.S.C. § 1002(21). Upon information and belief, Defendant exercised discretionary authority over how surcharge proceeds were collected, allocated, and applied. Defendant also failed to offer a reasonable alternative standard that would have enabled all similarly situated individuals to receive the same full reward for the entire Plan year. By structuring the program to deny retroactive reimbursement and by conditioning relief on enrollment timing rather than satisfaction of the standard, Defendant ensured that participants, not the employer, bore a disproportionate share of the Plan's costs.

72. Upon information and belief, Defendant controlled and disseminated Plan communications, including summary plan descriptions and enrollment materials describing the premium differential, but failed to include compliant notice of a reasonable alternative standard or the required statement that participants' physicians' recommendations would be accommodated. Defendant also failed to conduct periodic, prudent reviews of the wellness program and related communications to ensure compliance with ERISA. Instead, it maintained a defective program

27

that denied full reward and adequate notice year after year, despite its discriminatory effect and inconsistency with governing law.

73.    Defendant further breached its fiduciary duties by administering a Plan that did not conform with ERISA's anti-discrimination requirements. It acted disloyally by permitting surcharge funds to reduce its own contribution obligations and by maintaining a program that withheld reimbursement from participants who completed the reasonable alternative standard during the Plan year. Defendant also failed to notify participants in all plan materials describing the surcharge of all available avenues to avoid the surcharge, as required by 29 C.F.R. § 2590.702(f)(4)(v). These omissions and misrepresentations are incompatible with ERISA's fiduciary mandates of loyalty, prudence, and adherence to governing law.

74.    ERISA imposes on fiduciaries the duty to monitor the administration of the Plan and ensure compliance with applicable law. Defendant breached this duty by implementing and maintaining a non-compliant wellness program that violated ERISA's notice and full reward requirements. Defendant failed to review the program's structure, the disposition of surcharge proceeds, and the accuracy and completeness of participant communications, despite its obligation to ensure ongoing compliance with federal law.

75.    As a result of these breaches, Defendant was unjustly enriched at the expense of the Plan and its participants. By deducting surcharges directly from employees' paychecks without administering a compliant wellness program or providing full year relief, Defendant secured financial savings for itself while shifting costs to participants. The structure and administration of the program ensured that not all similarly situated individuals could receive the full reward, and participants were deprived of clear notice of the reasonable alternative standard. In effect,

Defendant converted employee contributions (i.e., Plan assets) into a source of corporate savings, in violation of 29 U.S.C. § 1104(a)(1)(A).

76.    By withholding unlawful surcharges and using those funds to offset its own financial obligations, Defendant caused the Plan to engage in transactions constituting a direct or indirect transfer of Plan assets for the benefit of a party-in-interest—namely, itself—in violation of 29 U.S.C. § 1106(a)(1). Defendant is a party-in-interest under 29 U.S.C. § 1002(14) because it is both the Plan sponsor and a fiduciary exercising discretionary authority over the Plan's administration and finances.

77.    By retaining and applying the tobacco surcharge amounts to its own benefit, Defendant increased its corporate assets and reduced the funds it was otherwise obligated to contribute to the Plan. Such conduct constitutes self-dealing prohibited by ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1). The surcharge should have supplemented, not displaced, employer contributions. Instead, Defendant's actions deprived participants of the full reward and used participant-paid Plan assets to subsidize its costs, leaving the Plan underfunded relative to what it should have received.

78.    Defendant breached its fiduciary duties by: administering a noncompliant Plan; failing to offer a *reasonable* alternative standard that makes available the full reward to participants during the Plan year; failing to properly disclose material information about participants' rights under the wellness program—specifically, the right to involve their personal physician in the development of an alternative standard—thereby depriving them of the ability to make informed choices; acting in its own financial interest to the detriment of the Plan and its participants; and failing to prudently review the terms of the Plan, the surcharge program, and participant communications to ensure compliance with ERISA's requirements. These breaches caused

29

Plaintiff and the Class to incur unlawful surcharges that shifted costs from Defendant to participants.

79.    As a direct and proximate result of these fiduciary breaches, members of the Class lost millions of dollars in the form of unlawful surcharges deducted from their paychecks.

80.    Plaintiff is authorized to bring this action on a representative basis on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2). Defendant is liable to make good to the Plan all losses resulting from its breaches, including all appropriate equitable and remedial relief, to disgorge all unjust enrichment and ill-gotten profits, and to restore to the Plan or a constructive trust all profits acquired through its violations, as alleged herein.

**COUNT IV**
**BREACH OF FIDUCIARY DUTY (INDIVIDUAL RELIEF)**
**(Violation of ERISA §§ 404, 406 and 409, 29 U.S.C. §§ 1104, 1106 and 1109)**

81.    Plaintiff re-alleges and incorporates herein by reference allegations 1–57 of this Complaint.

82.    At all relevant times, Defendant was the administrator of the Plan and was a fiduciary in that it exercised discretionary authority and control over the management of the Plan's assets.

83.    ERISA requires a fiduciary to act "solely in the interest of participants," to do so with "the care, skill, prudence, and diligence" of a prudent person, "in accordance with the documents and instruments governing the plan," and to refrain from "deal[ing] with the assets of the plan" in the fiduciary's own interest. 29 U.S.C. §§ 1104(a)(1); 1106(b)(1). These duties of loyalty and prudence are the "highest known to the law" and require fiduciaries to have "an eye single to the interests of the participants and beneficiaries." *Donovan*, 680 F.2d at 270 n.8.

30

84.     Instead of loyally and prudently acting in the best interests of Plan participants, Defendant chose to use Plan assets to benefit itself, to the detriment of Plaintiff and other similarly situated individuals, by unlawfully withholding millions of dollars in tobacco surcharges from participants' paychecks. Year after year, Defendant administered a noncompliant Plan and wellness program, exercising discretionary authority over how surcharge proceeds were handled, whether participants would receive the "full reward," and how participants were informed of their rights under the Plan.

85.     Upon information and belief, Defendant controlled and disseminated benefit guides and other Plan communications describing the premium differential but failed to notify participants of all the ways by which they could avoid the full year of surcharges. In particular, Defendant failed to disclose that completion of a reasonable alternative standard during the Plan year would entitle participants to full premium relief and instead conditioned relief on enrollment timing or pre-year elections. Defendant further failed to conduct periodic or prudent reviews of the surcharge and wellness program, and the related communications, to ensure compliance with ERISA and its regulations. Instead, Defendant allowed a structurally defective wellness program to persist year after year, resulting in discriminatory surcharges and depriving the Plan of employer contributions it should have received.

86.     Defendant breached its fiduciary duties by administering a Plan that did not conform with ERISA's anti-discrimination requirements. Defendant acted disloyally by using participant-funded surcharge amounts to reduce its own financial contributions. Defendant also failed to properly notify participants, year after year, of a compliant wellness program, including the availability of a reasonable alternative standard and the required physician-accommodation

31

language, and failed to review the terms of the Plan to ensure compliance. These breaches are incompatible with ERISA's core fiduciary mandates.

87.    ERISA imposes on fiduciaries the duty to monitor Plan administration and ensure compliance with governing law. Defendant breached this duty by implementing and maintaining a non-compliant wellness program that violated ERISA's notice and full-reward requirements. Defendant failed to review the program's structure, the disposition of surcharge proceeds, and the accuracy and completeness of participant communications, despite its obligation to ensure the Plan's ongoing compliance with federal law.

88.    Further, by withholding unlawful tobacco surcharges from participants' paychecks and using those funds to reduce its own financial obligations to the Plan, Defendant engaged in transactions that constituted a direct or indirect exchange or transfer of Plan assets for the benefit of a party in interest—namely, itself—in violation of 29 U.S.C. § 1106(a)(1). Defendant is a party in interest, as defined under 29 U.S.C. § 1002(14), because it is both the Plan sponsor and a fiduciary exercising discretionary authority over the Plan's assets.

89.    By retaining the amounts of the tobacco surcharges, Defendant increased its own corporate assets and reduced the contributions it otherwise would have made to fund Plan benefits.

90.    Defendant breached its fiduciary duties by: administering a noncompliant Plan; failing to make available the "full reward" to participants during the Plan year; failing to properly disclose material information about the wellness program—specifically, the right to include a participant's personal physician in the development of an alternative standard—thereby depriving participants of the ability to make informed choices; acting in its own financial interest to the detriment of the Plan and its participants; and failing to prudently review the terms of the Plan, the surcharge program, and participant communications over multiple years to ensure compliance with

ERISA's requirements. These breaches caused Plaintiff and the Class to incur unlawful surcharges that shifted costs to participants and away from Defendant. Had Defendant complied with its fiduciary duties, it would have corrected the program's deficiencies and ensured that surcharge proceeds were used to supplement, rather than replace, employer contributions.

91.     As a direct and proximate result of these fiduciary breaches, members of the Class lost millions of dollars in the form of unlawful surcharges deducted from their paychecks.

92.     Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff and the Class seek individual equitable relief necessary to redress Defendant's fiduciary breaches, including but not limited to restitution, surcharge, disgorgement, a constructive trust over improperly retained funds, and declaratory relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendant on all claims and requests that the Court awards the following relief:

A. An Order certifying this action as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as Class representative for the Class, and appointing the undersigned to act as Class Counsel;

B. A declaratory judgment that the unlawful and discriminatory tobacco surcharges imposed on participants violate ERISA's anti-discrimination provisions set forth in ERISA § 702, 29 U.S.C. § 1182;

C. An Order instructing Defendant to reimburse all persons who paid the unlawful and discriminatory surcharge;

D. A declaratory judgment that Defendant breached its fiduciary duties in violation of ERISA § 404, 29 U.S.C. § 1104 for, *inter alia*, instituting a surcharge on participants

33

without offering a reasonable alternative standard in violation of ERISA's anti-discrimination provisions and for failing to notify participants of an alternative standard, and for failing to adequately monitor the terms of the Plan, the surcharge, and the wellness program, as well as communications with participants, to ensure they complied with ERISA and the applicable regulations;

E. An Order requiring Defendant to provide an accounting of all prior payments of the surcharges under the Plan;

F. Declaratory relief as necessary and appropriate, including an Order that Defendant's program was unlawful and that Defendant should not further violate the duties, responsibilities, and obligations imposed on it by ERISA with respect to the Plan and ordering Defendant to remit all previously collected surcharges;

G. Disgorgement of any benefits or profits Defendant received or enjoyed due to the violations of ERISA § 702, 29 U.S.C. § 1182(b);

H. Restitution of all surcharge amounts Defendant collected;

I. Surcharge from Defendant totaling the amounts owed to participants and/or the amount of unjust enrichment obtained by Defendant as a result of its collection of the unlawful and discriminatory tobacco surcharges;

J. Relief to the Plan from Defendant for its violations of ERISA § 404, 29 U.S.C. § 1104, under 29 U.S.C. § 1109, including a declaration that the tobacco surcharges are unlawful; restoration of losses to the Plan and its participants caused by Defendant's fiduciary violations; disgorgement of any benefits and profits Defendant received or enjoyed from the use of the Plan's assets or violations of ERISA; surcharge; payment to the Plan of the amounts owed to members who paid the surcharges; removal and

34

replacement of the Plan's fiduciaries, and all appropriate injunctive relief, such as an Order requiring Defendant to stop imposing the unlawful and discriminatory surcharges on participants in the future.

K.  An award of pre-judgment interest on any amounts awarded to Plaintiff and the Class pursuant to law;

L.  An award of Plaintiff's attorneys' fees, expenses, and/or taxable costs, as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine; and

M.  Any other relief the Court determines is just and proper.

Dated: April 7, 2026                          Respectfully submitted,

_/s/ Christopher Williams_
Christopher Williams (VA Bar No. 87234)
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: cwilliams@sirillp.com

_Attorneys for Plaintiff and the Proposed Class_